IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE WILLSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:18-cv-3-RLW |
| ) | |
| CITY OF BEL-NOR, MISSOURI, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

On January 3, 2018, Plaintiff filed his Motion for Preliminary Injunction in this matter. In the Motion for Preliminary Injunction, Plaintiff alleges that the Bel-Nor sign ordinance violates the First Amendment to the United States Constitution and the free speech protections granted therein because the regulations are content-based and cannot withstand scrutiny, because the one-sign limit prohibits too much speech and because the ordinance is facially overbroad. This Court should deny Plaintiff's Motion for Preliminary Injunction.

When a Court is asked to issue a preliminary injunction, the Court must consider (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties or litigants; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Systems, Inc. vs. C.L. Systems, Inc.,* 640 F.2d 109, 114 (8th Cir. 1981).

SIGN ORDINANCES

While signs are forms of expression protected by the free speech clause, they pose distinctive problems which are subject to a municipality's proper exercise of police powers. *City of Ladue vs. Gilleo,* 512 U.S. 43, 48 (1994). Signs take up space, they obstruct views,

1

distract motorists, displace alternative uses for land and pose other problems that legitimately call for regulation. *Id.* It is understood that governments may regulate the physical characteristics of signs — just as they can, within reasonable bounds and absence of censorial purposes, regulate audible expressions in its capacity as noise. *Id.* The Courts will assume that a sign ordinance exception for address signs, safety signs and for sale signs in residential areas do not trigger strict scrutiny. *City of Ladue*, 512 U.S. at 46-47 n. 6.

Plaintiff argues that the ordinance at issue is content-based. Content-based laws are those that target speech based on their communicative content and are presumptively unconstitutional and may be justified only if the government proves they are narrowly tailored to serve a compelling state interest. *R.A.V. vs. St. Paul*, 112 S.Ct. 2538 (1992). Government regulation of speech is content-based if the law applies to particular speech because of the topic discussed or the idea or message expressed. *Reed vs. Town of Gilbert, Arizona*, 135 S.Ct. 2218, 2227 (2015). Determining whether an ordinance is content-based requires the Court to consider whether a regulation of speech on its face draws distinction based on the message a speaker conveys. *Id.*

The U.S. Supreme Court looked at the question of whether an ordinance was content based in *Reed vs. Gilbert*. In the *Reed* case, Gilbert, Arizona enacted an ordinance that regulated the use of various categories of signs based on the type of information they conveyed and then subjected each category to different restrictions. Ideological signs, which communicated a message or idea for non-commercial purposes was subject to one set of regulations whereas political signs were subject to a separate regulation. Temporary directional signs were subject to a third set of regulations. A church run by Clyde Reed wished to advertise the time and location of their Sunday church services and utilized a temporary directional sign that ran afoul of the ordinance for temporary directional signs. The Court determined that the ordinance was clearly

2

content-based in that the limitations on temporary directional signs were dependent upon the message conveyed. As the ordinance was content-based, it was subject to strict scrutiny.

In *Members of City Council of Los Angeles vs. Taxpayers for Vincent*, 466 U.S. 789 (1984), on the other hand, the Court declined to apply strict scrutiny to a municipal ordinance that exempted address numbers and markers commemorating historical, cultural or artistic events from a generally applicable limit on sidewalk signs. In doing so, the Court noted that such limitations did not render the ordinance content-based because the law did not reveal any bias or censorship.

Similarly, in *City of Ladue vs. Gilleo*, the ordinance at issue had a general prohibition of signs but had an exception for signs for churches, religious institutions and schools as well as commercial signs in commercially zoned or industrial zoned districts. The Court determined that these distinctions on the degree of regulation rendered the ordinance content-based.

The Ordinance in the present matter, on the other hand, reads:

> **WHEREAS,** the City of Bel-Nor wishes to regulate signs within the City in a manner that does not infringe upon the rights granted by the First Amendment to the Constitution of the United State of America, but that promotes the public safety, health and general welfare of the City and its citizenry; and
>
> **WHEREAS,** the City is cognizant of the limitations upon the regulation of signs recognized by the Courts, but the City has the power and obligation to its citizens to ensure that signs are not placed and/or maintained in a manner that is harmful to the health, safety and welfare of the City and its citizenry; and
>
> **WHEREAS,** a public hearing has been held regarding the proposed amendments and at which public hearing the parties of interest and all citizens and residents of the City were given an opportunity to be heard and were heard; and
>
> **WHEREAS,** the proposed amendments were considered by the Planning and Zoning Commission in accordance with all applicable laws and the Planning and Zoning Commission has made its recommendation to the Board of Aldermen.

3

E. *Sign Regulations.*

1. *Definitions.* For purposes of this Section, the following terms shall mean:

   *Sign:* Any poster, object, devise, or display, situated outdoors, which is used to advertise, identify, display, direct or attract attention to an object, person, institution, organization, business, product, service, event, idea, belief or location by any means, including but not limited to words, letters, figures, designs, symbols, colors, logos, fixtures, cartoons or images.

   *Sign Face:* The surface area of the sign structure on which items of information could be placed and/or viewed simultaneously. Sign supports are not considered part of the sign face.

2. *Permitted Signs on Private Property.* Each improved parcel is allowed to post one stake-mounted self-supporting freestanding sign with no more than two sign faces which are directly back-to-back of one another in the exterior portions of the property as long as the sign meets the following requirements:
   (a) No sign permitted in this Section shall be displayed in a manner that would otherwise cause it to be prohibited.
   (b) All signs permitted in this Section shall comply with all applicable codes and ordinances in regard to materials, illumination, placement, installation and maintenance.
   (c) Signs shall be mounted to the ground by stakes of either metal or wood that are no more than one (1) inch in width or diameter. No sign shall be installed in a permanent manner. No concrete or other type of footings or piers shall be allowed.
   (d) Signs shall be installed at grade and may not be elevated by use of a berm or other artificial rise in the normal grade of the yard.
   (e) No bricks, cinder blocks, pavers, masonry material, rock, railroad ties and similar materials shall be used in the installation or placement of the sign.
   (f) No sign shall be affixed to any building, fence, tree, gas light, lamp post, garage, basketball hoop or any structure or improvement.
   (g) No sign shall be displayed from the interior of any window.
   (h) All signs permitted in this Section shall only be displayed with permission of the parcel owner.
   (i) All signs permitted in this Section shall be placed at least ten (10) feet from any property boundary and each right-of-way line. In the front yard, if the right-of-way line is not clear, all signs shall be placed at least ten (10) feet from the interior edge of the sidewalk or fifteen (15) feet from

      the inside edge of the curb if there is no sidewalk.
- (j) Each sign shall have no more than two (2) sign faces which are directly back-to-back and mounted by use of the same stakes. No sandwich board signs or "V"-shaped signs shall be allowed.
- (k) Each sign face shall be no more than six (6) square feet in size.
- (l) Each sign shall be mounted so that it does not exceed four (4) feet in height.
- (m) The depth of the sign, measuring each back-to-back sign face, shall not exceed a depth of one (1) inch.
- (n) No materials shall protrude from the sign face.
- (o) Illumination in any manner is prohibited.
- (p) No sign shall be placed in any vacant lot or parcel.

3. *Prohibitions.* The following materials, appurtenances and types of signs are prohibited:
   - (a) The use of balloons, streamers, banners or similar objects as part of or attached to a sign.
   - (b) Beacons, spotlights and searchlights.
   - (c) Illumination of a sign either from the interior of a sign or from the exterior.
   - (d) Flashing or electronic signs.
   - (e) Moving signs, including any material that flutters, undulates, swings, rotates or otherwise moves.
   - (f) Obscenity.
   - (g) Imitation Traffic Control Signs.

          \*     \*     \*

5. *Flags.* The term "flag" shall include any fabric or bunting containing distinctive colors, patterns or symbols used as a symbol of a government or institution. For purposes of this Section, flags shall not be considered "signs".

    Not more than one (1) flag is hereby permitted on each improved parcel within the zoning district. Flags on residential parcels smaller than 15,000 square feet shall not exceed 3 feet by 5 feet in size. On parcels over 15,000 square feet, flags shall not exceed 6 feet by 10 feet in size. Within five (5) days prior to and three (3) days following a national holiday such as Independence Day, Memorial Day, Labor Day or Veterans Day, there shall be no limitation on the number of flags displayed on any parcel of land within the City.

    Flagpoles shall not exceed twenty-five (25) feet in height in residential districts.

6. *Address.* All owners and occupants shall ensure that the address of the property is properly displayed in accordance

5

>with law and ordinance. The numbers or letters used to display the address of the property shall not be considered a "sign" for purposes of this Section.

The ordinance here is obviously content-neutral. There are no limitations on the signs based upon content as there were in the *Gilleo* case and the *Reed* case. Instead, all signs are regulated in the same fashion. Whether the sign in political, religious or commercial, they are limited to one single sign with two sign faces. The message provided is irrelevant to whether the sign is permitted.

Plaintiff makes the argument that the sign ordinance is content-based because it distinguishes certain flags based upon what they symbolize and excludes some, but not others on the restriction on signs. First, the present matter does not involve flags. It involves signs. Plaintiff is not arguing that he was barred from flying any type of flag.

Further, the ordinance here specifically excludes flags from the definition of signs. In addition, the flag ordinance is broadly written to include almost everything under the definition of flag. Flags include any distinctive colors, patterns or symbols used as a symbol of a government or institution. The content on the sign is irrelevant and is completely content-neutral. While Plaintiff argued that some flags are regulated based upon what they symbolize, there is nothing in the regulation that does that.

Cases that have discussed ordinances as lacking content neutrality have typically been like *Reed* and *Gilleo* — ordinances where there are clear distinctions between signs based upon their content. For example, in *Neighborhood Enterprises vs. City of St. Louis*, 644 F.3d 728 (8th Cir. 2011), the sign ordinance at issue was clearly based upon content as the zoning ordinance exempted from regulations signs that were national, state, religious, fraternal or professional or civic symbols or crests. See *City of St. Louis*, 644 S.W.3d at 737. In the present matter, the ordinance in question has no such exceptions or distinctions.

6

Plaintiff also argues that even if the ordinance is facially content-neutral — which it clearly is — that the ordinance is unconstitutional because it is too broad or, in the alternative, it is too restrictive. Plaintiff argues the definition of sign is so broadly worded that it curtails curtains printed with Easter Eggs, nativities, rainbow flags, St. Louis Blues flags, a birthday streamer hung across a front porch or balloons affixed to open house today signs. Defendant disagrees with the characterization of the sign ordinance as these items clearly do not come within the definition of sign. Plaintiff has just cited a number of objects which they allege come within the definition of sign but which clearly do not.

Plaintiff also alleged that the ordinance violates the First Amendment because the limitation to one sign is too restrictive.

It is here that we get into the catch-22 concern of the concurring opinions in the *Reed* case. In *Reed*, Justices Kagen Ginsburg and Breyer expressed concern about how sign ordinances would be interpreted and how extensively courts would be called upon to question sign ordinances under almost any circumstances whatsoever. See *Reed vs. Gilbert, Arizona*, 135 S.Ct. at 2237 (Kagen concurring). This was because the Court was not providing proper guidance on exactly what was, and was not, allowed. *Id.*

As Judge Carnes indicated in *Kennedy vs. Avondale Estates, Georgia*, 414 F.Supp. 2d 1184, many courts have noted that there is a catch-22 for municipalities who attempt to regulate signs in the community because the courts have expressly indicated that cities are permitted to regulate signs to prevent aesthetic harm and to provide for safety but courts have provided little guidance to what is too much and too little. *Kennedy*, 414 F.Supp. 2d at 1198. Indeed, the Court noted the dissonance between the "lofty rhetoric" of the First Amendment analysis and the "tedious line-drawing" of actual implementation. *Id.* As the Court noted, if a municipality is

7

permitted to limit the number of signs, then what is the number they are allowed to limit a property to? "[i]s a square footage restriction of four square feet per sign too restrictive? If so, what will pass constitutional muster? Will six square feet do it? Or is ten feet the right number? Ultimately, these types of discussions sound more like the talk of an interior decorator or landscape architect than like the language typically used by judges and other types of legal analysis." *Kennedy*, 414 F.Supp. 2d at 1206.

In the *Gilleo* case, the U.S. Supreme Court determined that prohibiting all signs was too limited. In the present matter, a sign is permitted with two sign faces that are directed back-to-back of one another. Hence, a property is permitted to express two ideas on one stake on a sign in the yard. Plaintiff alleges that this is too restrictive but does not indicate what would be a proper number because there is no such answer. Municipalities must be able to make the determination of what is a reasonable limitation on the number of signs on a yard so long as that number does not suppress speech. In the present instance, the City of Bel-Nor determined that one sign with two signs facings would be sufficient to serve the aesthetic and safety concern of the municipality without unduly restricting speech. Such a restriction is not an undue restriction on the Plaintiff's speech.

Plaintiff also argues that the ordinance fails because it is facially overbroad. Laws are facially overbroad only when a *substantial* number of its applications are unconstitutional, judged in relation to the statutes plainly legitimate sweep. *U.S. vs. Stevens*, 569 U.S. 460, 473 (2010). The first step in overbreadth analysis is to construe a challenged statute; it is impossible to determine whether a statute reaches too far without knowing what the statute covers. *Id.* In *Stevens*, the federal law at issue prohibited any depiction in which a living animal was intentionally maimed, mutilated, tortured, wounded or killed. While the Court noted that

8

"maimed, mutilated and tortured" conveyed cruelty, "wounded or killed" did not convey that limitation and included pictures of animals that had been killed while hunting or, for example, an animal killed humanely. Hence, the statute was overbroad.

There are no overbreadth concerns with respect to the present ordinance. The ordinance here regulates signs. The definition of sign is clear. The ordinance limits signs on the person's property to one sign with two sign faces. Such a limitation is not going to confuse the residents of Bel-Nor or anyone else as to what is being regulated.

Plaintiff also claims that they will face irreparable harm because they have already been injured by risking prosecution and risk additional prosecution. Plaintiff is incorrect in arguing that he risks additional prosecution or that he risks imprisonment or additional fines. While Plaintiff argues that a violation of the sign ordinance carries a potential penalty of $1,000 and 90 days in jail, this is not true. The Missouri legislature passed §479.350 and 479.353 in 2015 and 2016 respectively. Both of these statutes would apply. Under these statutes, no incarceration is permitted for an ordinance violation related to zoning regulation. Nor may a fine in excess of $250 be assessed for the first violation. Arguments about imprisonment are, therefore, incorrect.

## CONCLUSION

Based upon the above, Defendant hereby requests this Court deny Plaintiff's Motion for Preliminary Injunction and for any other and further relief that the Court deems just and proper.

Respectfully submitted,

BRINKER & DOYEN, L.L.P.

*/s/ Aaron I. Mandel*
Jeffrey J. Brinker, #30355
Aaron I. Mandel, #39692
34 N. Meramec Avenue, 5th Floor
Clayton, Missouri 63105
PHONE:   314.863.6311
FAX:        314.863.8197
jbrinker@brinkerdoyen.com
amandel@brinkerdoyen.com
***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed with the Court's electronic filing system, with notice of case activity to be generated and sent electronically by the Clerk of said Court on the 6th day of February, 2018, to all counsel of record.

Anthony E. Rothert, #44827MO
Jessie Steffan, #64861MO
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone:  (314) 652-3114
arothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox, #61278MO
ACLU of Missouri Foundation
406 W. 34th Street, Suite 420
Kansas City, Missouri 64111
Phone:  (816) 470-9938
gwilcox@aclu-mo.org

**Attorneys for Plaintiff**

*/s/ Aaron I. Mandel*