UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE WILLSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:18-CV-0003 RLW |
| CITY OF BEL-NOR, MISSOURI, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

The motion of Lawrence Willson (Plaintiff) for a preliminary injunction enjoining the City of Bel-Nor, Missouri (Bel-Nor) came before the Court for a hearing on March 23, 2018. Plaintiff and William Hook, the mayor pro tem of Bel-Nor, testified. Various documents and photographs were admitted into evidence. The Court now finds and concludes as follows.

### Findings of Fact

1. Plaintiff is, and at all times relevant has been, a resident of Bel-Nor and owner of a single-family residence.

2. There are three signs in his front yard. They are freestanding and stake-mounted, and read: "Black Lives Matter"; "Clinton Kaine"; and "Jason Kander U.S. Senate." The "Black Lives Matter" sign has been there since the unrest in Ferguson. The other two signs have been there since the 2016 election. Plaintiff believes these signs have a political message and wishes to continue displaying all three.

3. Plaintiff received a written warning about his signs in June 2017 for a violation of Bel-Nor Code § 400.270.

4. In September 2017, Bel-Nor enacted Ordinance No. 983, repealing in full § 400.270. Ordinance 983, enacted after a public hearing and codified as § 400.120(E), reads, in relevant part:

**WHEREAS**, the City of Bel-Nor wishes to regulate signs within the City in a manner that does not infringe upon the rights granted by the First Amendment to the Constitution of the United States of America, but that promotes the public safety, health and general welfare of the City and its citizenry, and

**WHEREAS**, the City is cognizant of the limitations upon the regulation of signs recognized by the Courts, but the City has the power and obligation to its citizens to ensure that signs are not placed and/or maintained in a manner that is harmful to the health, safety and welfare of the City and its citizenry, . . .

**BE IT ORDAINED . . . AS FOLLOWS:**

*Sign Regulations*

1. *Definitions.* For purposes of this Section, the following terms shall mean:

*Sign*: Any poster, object, devise, or display, situated outdoors, which is used to advertise, identify, display, direct or attract attention to an object, person, institution, organization, business, product, service, event, idea, belief or location by any means, including but not limited to words, letters, figures, designs, symbols, colors, logos, fixtures, cartoons or images.

. . . .

2. *Permitted Signs on Private Property.* Each improved parcel is allowed to post one stake-mounted self-supporting freestanding sign with no more than two sign faces which are directly back-to-back of one another in the exterior portions of the property as long as the sign meets the following requirements:

. . . .

(f) No sign shall be affixed to any building, fence, tree, gas light, lamp post, garage, basketball hoop or any structure or improvement.

(g) No sign shall be displayed from the interior of any window.

3. *Prohibitions.* The following materials, appurtenances and types of signs are prohibited:

(a) The use of balloons, streamers, banners or similar objects as part of or attached to a sign.

2

. . . .

(e) Moving signs, including any material that flutters, undulates, swings, rotates or otherwise moves.

. . . .

5. *Flags*. The term "flag" shall include any fabric or bunting containing distinctive colors, patterns or symbols used as a symbol of a government or institution. For purposes of this Section, flags shall not be considered "signs."

Not more than one (1) flag is hereby permitted on each improved parcel within the zoning district. . . . Within five (5) days prior to and three (3) days following a national holiday such as Independence Day, Memorial Day, Labor Day or Veterans Day, there shall be no limitation on the number of flags displayed on any parcel of land within the City.

5. Plaintiff's three signs are "signs" as defined in § 400.120(E).

6. Plaintiff received an information and summons in December 2017 charging him with violating Ordinance 983 by displaying his three signs. The information also advised him that the violation was punishable upon conviction under § 100.080 of the Municipal Code. Section 100.80(A)(1) provides for fines not exceeding $1,000.00 or imprisonment not exceeding 90 days, or by both such fine and imprisonment, but in any case wherein the penalty for an offense is fixed by any Statute, the same penalty shall apply." Section 100.80(A)(2) provides that "each and every day any violation of this Code or any ordinance . . . shall constitute a separate offense." The summons listed a court date of January 3, 2018. It also read, in relevant part: "If you fail to appear, a WARRANT may be issued for your arrest."

7. Section 479.350 of the Missouri Revised Statutes prohibits incarceration for an ordinance violation. Section 479.353 prohibits the imposition of a fine in excess of $250 for the first violation.

8. Plaintiff testified he is afraid he is may be subject to a fine and incarceration for violating § 400.120(E). Until the hearing, no one had explained to him state statutes prevented

him from being incarcerated for violating a municipal ordinance or limited the amount of fines he could be assessed.

9. As of the date of the hearing, Plaintiff's three signs remain in his lawn.

10. Plaintiff and his wife have a sign taped to the inside of their glass front door. It reads, in relevant part: "IN CASE OF AN EMERGENCY PLEASE RESCUE OUR PETS!" This sign has been there for years.

11. They also have a garden flag reading "Irish for a Day."

12. Plaintiff has not been cited for either the garden flag or the front-door sign.

13. A neighbor of Plaintiff has a sign in his yard supporting a candidate for mayor in an upcoming municipal election and also has a fabric pennant with a stylized "B" – the first letter of his last name – by his front door.

14. Another neighbor has a sign reading "Proud Union Home" in his front yard and a security system sign by the front door.

15. Bel-Nor is a city of approximately 1,500 residents and is 1.4 square miles. It is 95% residential. Included in the remaining 5% are an elementary school and a Catholic girls' school, Incarnate Word. Students at the elementary school arrive by bus or private vehicle. The 400 students at Incarnate Word are either driven or drive to the school.

16. On the north, Bel-Nor abuts the University of Missouri at St. Louis. The students are commuters.

17. The homes in Bel-Nor are well-maintained, primarily two-story brick homes, and usually sit on a 50-foot lot. The streets are usually 26 feet wide. When vehicles are parked on both sides of the street, two cars cannot pass.

18. Concern with public safety and a desire to comply with the Supreme Court's First Amendment rulings led to the enactment of Ordinance 983. The narrow streets, the amount of school-related traffic, and a concern about drivers being distracted by signs are all safety-related considerations. Bel-Nor did not rely on any traffic studies in enacting Ordinance 983.

19. There was no testimony about what had occurred at Plaintiff's January 3, 2018 court date.

## Conclusions of Law

"To determine whether to issue a preliminary injunction, [this Court] must consider: (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the injury that granting the injunction will inflict on the other interested parties; (3) the probability the movant will succeed on the merits; and (4) whether the injunction is in the public interest." *Powell v. Noble*, 798 F.3d 690, 697 (8th Cir. 2015) (citing *Dataphase Sys, Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). "[N]o single factor is determinative"; rather, the likelihood of success "must be examined in the context of the relative injuries to the parties and the public." *Dataphase*, 640 F.2d at 113. "'When[, however,] a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied.'" *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc) (quoting *Phelps-Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir. 2011) (per curiam)).

<u>Likelihood of Success.</u> "The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert, Ariz.*, 135 S.Ct. 2218, 2226 (2015) (quoting U.S. Const., Amdt. 1). "Under that Clause, a government, including a municipal government vested with state authority,

'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Id.* (quoting *Police Dep't of Chi. v. Mosley,* 408 U.S. 92, 95 (1972)). "[S]igns are a form of expression protected by the Free Speech Clause," but "pose distinctive problems that are subject to municipalities' police powers." *City of Ladue v. Gilleo,* 512 U.S. 43, 48 (1994). "[S]igns take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation." *Id.* "[G]overnments may regulate the physical characteristics of signs – just as they can, within reasonable bounds and absent censorial purpose, regulate audible expression in its capacity as noise." *Id.* "[T]he First Amendment does not guarantee 'the right to communicate one's view at all times and places or in any manner that may be desired.'" *Hensel v. City of Little Falls, Minn.*, 992 F.Supp.2d 916, 922 (D. Minn. 2014) (quoting *Heffron v. Int'l Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981)).

To determine whether Ordinance 983[1] is within appropriate bounds and without inappropriate purpose, the Court first determines whether it is content-based or content-neutral and, if the former, applies strict scrutiny and, if the latter, applies intermediate scrutiny. *Whitton v. City of Gladstone, Mo.*, 54 F.3d 1400, 1403 (8th Cir. 1995). *Accord Neighborhood Enters., Inc. v. City of St. Louis*, 644 F.2d 728, 736 (8th Cir. 2011). A restriction on speech is not content-neutral simply by virtue of being viewpoint neutral. *Id.* "The Supreme Court has held that a restriction on speech is content-based when the message conveyed determines whether the speech is subject to the restriction," *Whitton*, 54 F.3d at 1403-04 (citing *City of Cincinnati v.*

---

[1] Plaintiff was cited in 2017 for violating Bel-Nor's previous sign ordinance, § 400.270. (*See* Pl. Ex. 1, ECF No. 24-1.) This ordinance included specific regulations for political signs and prohibitions against signs indicating residential premises were for sale, lease, or rent; the ordinance has been repealed. There is no allegation that Plaintiff was ever fined or imprisoned or suffered any other adverse consequence due to the repealed ordinance.

*Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)), regardless of the municipality's motive, *Reed*, 135 S.Ct. at 2228. A party opposing an ordinance's sign restrictions "need adduce no evidence of an improper censorial purpose." *Id.* (interim quotations omitted). Rather, Bel-Nor bears the burden of establishing that Ordinance 983 is lawful. *Hensel*, 992 F.Supp.2d at 923.

Plaintiff argues Ordinance 983 is content-based "because it distinguishes certain flags based on what they symbolize and some, but not others, from the restriction on signs." (Pl.'s Mem at 7, ECF No. 4.) And, Bel-Nor's "[v]ague recitations of welfare interests" do not survive strict scrutiny. (*Id.*)

At issue are the three signs Plaintiff wishes to keep in his yard. No one sign takes preference over another in terms of Plaintiff's use of it to express his opinion; no one sign takes preference over another in terms of Bel-Nor considering it to be in violation of its ordinance. *Cf. Gilleo*, 512 U.S. at 52-53 (finding ordinance banning all residential signs except those that fit within ten exemptions was not content-neutral because it reflected municipality's judgment that some signs were too vital to be banned, regardless of the aesthetic concerns that were cited as the ordinance's purpose); *Hensel*, 992 F.Supp.2d at 923 ("The principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech because of disagreement with the message the speech conveys.") (interim quotations omitted). Plaintiff wants to keep all three. Bel-Nor permits him to keep only one, although on the one stake he can have two sign faces back-to-back. There is nothing to indicate Plaintiff cannot now have an "Obama Biden" and/or a "Romney Ryan" sign in his yard, if it was affixed to the one freestanding stake permitted under the Ordinance. Duration or timing is not a consideration. *Cf. Whitton*, 54 F.3d at 1403 (finding ordinance placing durational limits only on political signs to be content-based). Nor is there any evidence indicating a distinction in the ordinance or

enforcement thereof between commercial and noncommercial messages. Again, the issue is one of numbers only.[2]

The preamble of Ordinance 983 explains its enactment was motivated by concerns with the public safety and general welfare of Bel-Nor's citizens. Hook described the concern about traffic safety and distracted drivers arising from a combination of narrow residential streets used by drivers to and from two schools and one university. A motivation of "eliminating secondary effects . . . unrelated to the content" of an ordinance restricting speech may render that ordinance content-neutral. *Excalibur Group, Inc. v. City of Minneapolis*, 116 F.3d 1216, 1220 (8th Cir. 1997) (interim quotations omitted).

Plaintiff argues Ordinance 983 is content-based because it classifies and regulates flags as signs and then allows some flags more latitude in terms of duration and number depending on what the flags symbolize. In his complaint and declaration, Plaintiff focuses on his three signs. He wishes to continue displaying *these* signs. In his testimony, he did not describe any thwarted desire to have a flag in his yard or express any trepidation he might be issued a summons for the "Irish for a Day" flag in his yard. There is no evidence that the any exemption for flags affected Plaintiff in any adverse way. *Cf. Advantage Media, LLC v. City of Hopkins*, 379 F.Supp.2d 1030, 1036 (D. Minn. 2005) (plaintiffs had traditional standing to challenge sign ordinance because they submitted evidence that they had refrained from posting signs for fear the ordinance would be enforced against them). In *Members of the City Council of the City of L.A. v.*

---

[2]Ordinance 983 restricts the size, height, and proximity to the property boundary and right-of-way line. These restrictions are not challenged by Plaintiff. *See Prime Media, Inc. v. City of Brentwood, Tenn.*, 398 F.3d 814, 819 (6th Cir. 2005) (ordinance placing size and height restrictions on billboards did not violate First Amendment; restrictions had no censorial purpose; were viewpoint- and content-neutral; and regulated only non-expressive components of billboards); *Kennedy v. Avondale Estates, Ga.*, 414 F.Supp.2d 1184, 1208 (N.D. Ga. 2005) (finding ordinance's size and height restrictions on signs were not unconstitutional).

8

*Taxpayers for Vincent*, 466 U.S. 789, 797 (1984), the Supreme Court noted that there was but one exception – an overbreadth challenge, see pages 11 to 12, infra – to "the general rule that constitutional adjudication requires a review of the application of [an ordinance] to the conduct of the party before the Court." *See also Neighborhood Enters.*, 644 F.3d at 734-35 (reaching as "inescapable threshold question" whether plaintiff had standing to challenge application of sign ordinance).

For the foregoing reasons, in the context of the pending motion for a preliminary injunction, the Court finds Ordinance 983 to be content-neutral, not content-based.

"[A] regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests, but it need not be the least restrictive or least intrusive means of doing so. *Ward v. Rock Against Racism*, 491 U.S. 781, 798-99 (1989). "Rather, the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* at 799 (alteration in original) (interim quotations omitted). If "the means chosen are not substantially broader than necessary to achieve the government's legitimate interest, . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-restrictive alternative." *Id.* at 800. *Accord Excalibur Group*, 116 F.3d at 1221.

Esthetics and traffic safety "are significant governmental interests." *La Tour v. City of Fayetteville, Ark.*, 442 F.3d 1094, 1097 (8th Cir. 2006). *See also Hensel*, 992 F.Supp.2d at 925 ("It cannot seriously be disputed that the ills (allegedly) sought to be cured by the ordinance – visual clutter, diminished property values, and traffic hazards – are significant governmental interests."); *Kennedy*, 414 F.Supp.2d at 1207 ("Certainly, limiting the number, size, and height of

signs serves the desired ends of aesthetic harmony and public safety. Yards that are less littered with signs will look neater than yards that are more cluttered."). Hook testified, without contradiction, about the well-maintained character of the houses in Bel-Nor and about the City's traffic concerns. He also testified that Bel-Nor did not rely on any traffic studies when enacting Ordinance 983. In *Hensel*, the court rejected the plaintiff's argument that before it can enact an ordinance regulating yard signs, a municipality must gather factual evidence or conduct studies establishing a link between the secondary effects at issue and signs. *Id.* at 927. "Rather, a municipality 'may rely upon *any evidence* that is *reasonably believed* to be relevant for demonstrating a connection between speech and a substantial, independent government interest,' which may simply include 'common sense.'" *Id.* (quoting *City of L.A. v. Alameda Books, Inc.*, 535 U.S. 425, 438-39 (2002)) (emphasis in original). *See Luce v. Town of Campbell, Wis.*, 872 F.3d 512, 516-17 (7th Cir. 2017) (citing Supreme Court cases in which Justices affirmed government's rationale for regulation affecting citizen's First Amendment rights based on their own assessments or beliefs without requiring empirical studies). Plaintiff does not dispute that the use of the narrow residential streets in Bel-Nor by students driving or being driven to and from three schools is relevant to Bel-Nor's concern about distracted drivers. *See Excalibur Group*, 116 F.3d at 1222 (affirming city's sign ordinance even though "reasonable people might quibble about the extent to which the regulations serve the city's significant interests or about whether a better solution might be available").

Nor does Plaintiff suggest what number of signs would allow him to exercise his First Amendment rights and also accommodate Bel-Nor's interests in the safety of its residents and its streets. *See Kennedy*, 414 F.Supp.2d at 1207 ("If, then, one can envision a proper ordinance restricting the number of signs, that means there must be a limitation on the number of signs that

would be a constitutionally acceptable restriction."). He wishes to keep his three signs; Hook testified Bel-Nor never considered allowing two signs. Bel-Nor need not, however, employ the least restrictive means of serving its interests. *Id.* at 928-29. "[A] perfect fit between residents' First Amendment rights (on one hand) and [Bel-Nor's] interests in traffic safety, property values, and aesthetics (on the other hand) is not required." *Id.* at 928 (citing *Ward*, 491 U.S. at 798-99).

Plaintiff's three signs are each one-faced. He could have a sign with two faces, or, with no allegation that his messages are time-sensitive, could alternate signs. *See Hill v. Colorado*, 530 U.S. 703, 726 (2000) ("[W]hen a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrict or least intrusive means of serving the statutory goal.").

Plaintiff argues that the ordinance "criminalize[s] such expression[s]" as a Post-It note on the front door. (Pl. Mem. at 10.) This argument is belied by the record. Ordinance 983 prohibits signs being displayed in *windows*. Plaintiff testified he has had a sign in his front door for years. He has not been fined for such sign, nor has he expressed any fear that he will be.

Plaintiff also argues that Ordinance 983 is overbroad because it prohibits "expression visible outside a person's home in virtually all recorded forms." *See Gilleo*, 512 U.S. at 55 ("prohibitions foreclosing entire medium of expression" can violate First Amendment by violating too much speech).

Under the overbreadth doctrine, "the very existence of some broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." *Taxpayers for Vincent*, 466 U.S. at 798. *Accord Advantage Media, LLC v. City of Hopkins*, 379 F.Supp.2d 1030, 1037 (D. Minn. 2005) ("[T]he overbreadth doctrine provides an exception to the general principle that a party may only assert

their own rights and not the claims of third parties not before the court."). "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Taxpayers for Vincent*, 466 U.S. at 800. Rather, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties . . . for it to be facially challenged on overbreadth grounds." *Id.* at 801.

Plaintiff has failed to establish that such a danger exists. As noted in *Taxpayers for Vincent*, 466 U.S. at 810, a government's interests in regulating signs address the medium itself. There has been no showing that other modes of communication are inadequate for the expression of speech by Bel-Nor's residents.

Threat of Irreparable Harm. "It is well-established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Powell*, 798 F.3d at 702 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Plaintiff's three signs remain standing. And, although he had a court date on January 3, 2018, there is no evidence of any consequences, including imposition of a fine, as a result of any proceedings on that date.

Plaintiff testified about his fear of incarceration should he not comply with Ordinance 983. Missouri law prohibits such. The sentence about a warrant being issued for his arrest is in reference to a failure to appear for court, not to his signs.

Balance Between Harm and Injury; Public Interests. Because the record now before the Court does not indicate that Plaintiff is in danger of losing any First Amendment freedoms during the pendency of this action, the considerations of balance between harm and injury and of the public interests do not favor granting Plaintiff's motion for a preliminary injunction.

12

Accordingly, based on foregoing findings and conclusions,

**IT IS HEREBY ORDERED** that the motion of Lawrence Willson for a preliminary injunction is DENIED [ECF No. 3]

Dated this 29th day of March 2018.

RONNIE L. WHITE
**UNITED STATES DISTRICT JUDGE**