## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| LAWRENCE WILLSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-CV-3 RLW |
| | ) |
| CITY OF BEL-NOR, MISSOURI, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Lawrence Willson's ("Plaintiff") Motion for Partial Summary Judgment. (ECF No. 77.) Defendant City of Bel-Nor, Missouri ("Bel-Nor") opposes the motion and it is fully briefed. The Court will grant Plaintiff's Motion and permanently enjoin enforcement of Section 400.120(E) of Bel-Nor's Code of Ordinances, as Plaintiff has established that no genuine issues of material fact remain and § 400.120(E) violates the Free Speech Clause of the First Amendment to the United States Constitution.

### I.   Background

Plaintiff filed this action in January 2018, after he was charged by information with violating § 400.120(E) of Bel-Nor's Code of Ordinances for displaying three separate signs in the yard of his home in Bel-Nor. The Complaint alleges that § 400.120(E) violates the Free Speech Clause of the First Amendment to the United States Constitution on its face and as applied to Plaintiff (Count I), and the Due Process Clause of the Fourteenth Amendment (Count II).

Plaintiff sought a preliminary injunction against enforcement of § 400.120(E). The Court conducted an evidentiary hearing on March 23, 2018, and issued a Memorandum and Order

denying Plaintiff's motion for preliminary injunction.[1]  Willson v. City of Bel-Nor, Mo., 298

F.Supp.3d 1213 (E.D. Mo. 2018).  Plaintiff appealed to the Eighth Circuit Court of Appeals,

which held that the preliminary injunction should be granted, and reversed and remanded for

further proceedings consistent with its opinion.  Willson v. City of Bel-Nor, Mo., 924 F.3d 995,

1004 (8th Cir. 2019).  Following remand, the Court issued a preliminary injunction on June 21,

2019, enjoining Bel-Nor from enforcing § 400.120 of the Bel-Nor Code of Ordinances until the

matter is decided on the merits.  (ECF No. 60.)  Plaintiff now moves for partial summary

judgment on liability and the entry of a permanent injunction.[2]

## II.    Legal Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);

Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  The substantive

law determines which facts are critical and which are irrelevant.  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986).  Only disputes over facts that might affect the outcome will

properly preclude summary judgment.  Id.  Summary judgment is not proper if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.  Id.

A moving party always bears the burden of informing the Court of the basis of its motion.

Celotex Corp., 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving

---

[1]The Court did not consolidate the preliminary injunction with the trial on the merits, but Rule 65(a)(2) provides, "[E]vidence that is received on the motion [for preliminary injunction] and that would be admissible at trial becomes part of the trial record and need not be repeated at trial."  Fed. R. Civ. P. 65(a)(2).  The Court relies in part on testimony developed at the preliminary injunction hearing.

[2]Plaintiff does not seek summary judgment on his claim for damages, which remains pending.

party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "The nonmoving party may not rely on allegations or denials," but rather "must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor on more than mere speculation or conjecture." Carter v. Pulaski Cnty. Special Sch. Dist., 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting Ball v. City of Lincoln, Neb., 870 F.3d 722, 727 (8th Cir. 2017) (cleaned up)). "Small factual disputes about the underlying events . . . could only create the 'metaphysical' kind of doubt that the Supreme Court decried in Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)." Main v. Ozark Health, Inc., 959 F.3d 319, 327 (8th Cir. 2020) (cleaned up; quoted case omitted).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

## III. Facts

Plaintiff Lawrence Willson is a citizen of Missouri who resides in the City of Bel-Nor. Plaintiff owns and lives in a single-family home in a residential portion of Bel-Nor. Since before January 1, 2017, Willson displayed three freestanding, stake-mounted yard signs in his front yard that bore the words "Black Lives Matter," "Clinton Kaine," and "Jason Kander U.S. Senate." By displaying the signs in his yard, Plaintiff intends to communicate to others his belief in the

3

messages on the signs, which he believes have political messages. (Pl. Decl. of Mar. 23, 2020, ¶¶ 7-10 (ECF No. 78-1).)

At some point after the preliminary injunction hearing was held, a thunderstorm damaged the "Clinton Kaine" and "Jason Kander U.S. Senate" signs. As a result, Plaintiff took these signs down but otherwise would have left them on display to show he had supported these candidates, and as a political protest. (Pl. Decl. of May 20, 2020, ¶¶ 11-12 ("Pl. 2d Decl.") (ECF 89-2)); (Tr. Prelim. Inj. Hr'g of Mar. 23, 2018, 7:14-8:6. ("Tr.").) The "Black Lives Matter" sign remains in Plaintiff's yard. (Pl. 2d Decl. ¶ 13; Pl.'s Ex. 6-A (photo of Plaintiff's front yard and signs).)

After the two signs were damaged, Plaintiff began displaying an additional yard sign that bears the word "Thanks" along with the image of a red cross above a smile, to send a message to recognize essential workers for their efforts during the COVID-19 pandemic. As of at least May 20, 2020, Plaintiff displayed both the Black Lives Matter and Thanks signs in his yard. (Pl. 2d Decl. ¶¶ 15-17; Pl.'s Ex. 6-A). At all relevant times, Plaintiff has also had a "Save Our Pets" sign on his front door and a decorative "WILLSON" hanging mounted to his garage door. (Pl. 2d Decl. ¶ 14.) Plaintiff intends to display additional yard signs in the future, including a sign expressing support for presidential candidate Joe Biden as soon as he selects a running mate. (Pl. 2d Decl. ¶ 18.)[3]

---

[3]Bel-Nor seeks to establish an issue of fact as to whether Plaintiff has only one sign in his yard and thus may no longer be in violation of the Ordinance. In support, it cites the Affidavit of William Hook, Mayor of Bel-Nor, which states in pertinent part, "As of May 4, 2020, the Plaintiff does not have the three yard signs displayed in his yard that he did when he was cited, and when he filed the instant lawsuit, as I have personally observed." (Hook Aff., Bel-Nor Ex. A ¶ 8 (ECF No. 84-1).) This averment does not support that Plaintiff has only one sign in his yard, does not controvert the averments in Plaintiff's Second Declaration as set forth above, and does not establish a genuine dispute of material fact on this issue.

Bel-Nor has a population of approximately 1,500 people and is approximately 1.4 square miles in size. Its streets are approximately 26 feet wide and it allows parking on both sides of the street. Houses located in Bel-Nor sit on lots that have approximately 50-foot frontages.

Bel-Nor's Board of Aldermen approved Ordinance 983 (the "Ordinance") on September 18, 2017, following a public meeting with the City Planning and Zoning Commission held August 21, 1017, where regulation of yard signs was discussed at length. In brief, the Ordinance permits "each improved parcel" of private property to "post one stake-mounted and self-supporting freestanding sign" and "[n]ot more than one (1) flag." Willson, 924 F.3d at 999.

Bel-Nor was motivated to enact the Ordinance out of concerns over public safety and aesthetics. Specifically, Bel-Nor is concerned for traffic safety along its streets, particularly the safety of youthful drivers, due to the presence of three schools in the area: Bel-Nor Elementary School, Incarnate Word Academy, and the University of Missouri-St. Louis. Bel-Nor's aesthetic concerns focus on clutter presented by single residential properties displaying multiple yard signs.

Bel-Nor discussed the language of the Ordinance with the City Attorney, the members of the Board of Aldermen, Mayor William Hook, and members of the public on August 21, 2017, to balance the concerns of Bel-Nor and its residents. Although Bel-Nor considered other language for the Ordinance, it did not consider any alternative to address its safety and aesthetic concerns apart from enacting a sign ordinance.

Bel-Nor's Ordinance regulating signs is codified as Municipal Code § 400.120(E) and, as amended, provides:

> **WHEREAS**, the City of Bel-Nor wishes to regulate signs within the City in a manner that does not infringe upon the rights granted by the First Amendment to the Constitution of the United

5

States of America, but that promotes the public safety, health and general welfare of the City and its citizenry; and

**WHEREAS**, the City is cognizant of the limitations upon the regulation of signs recognized by the Courts, but the City has the power and obligation to its citizens to ensure that signs are not placed and/or maintained in a manner that is harmful to the health, safety and welfare of the City and its citizenry; and

**WHEREAS**, a public hearing has been held regarding the proposed amendments and at which public hearing the parties of interest and all citizens and residents of the City were given an opportunity to be heard and were heard; and

**WHEREAS**, the proposed amendments were considered by the Planning and Zoning Commission in accordance with all applicable laws and the Planning and Zoning Commission has made its recommendation to the Board of Aldermen.

. . . .

E. Sign Regulations.

<u>1.</u> *Definitions.* For purposes of this Section, the following terms shall mean:

> *Sign*: Any poster, object, devise, [sic] or display situated outdoors which is used to advertise, identify, display, direct or attract attention to an object, person, institution, organization, business, product, service, event, idea, belief or location by any means, including but not limited to words, letters, figures, designs, symbols, colors, logos, fixtures, cartoons or images.

> *Sign Face*: The surface area of the sign structure on which items of information could be placed and/or viewed simultaneously. Sign supports are not considered part of the sign face.

<u>2.</u> *Permitted Signs On Private Property.* Each improved parcel is allowed to post one (1) stake-mounted self-supporting freestanding sign with no more than two (2) sign faces which are directly back-to-back of one another in the exterior portions of the property as long as the sign meets the following requirements:

<u>a.</u> No sign permitted in this Section shall be displayed in a manner that would otherwise cause it to be prohibited.

6

b.  All signs permitted in this Section shall comply with all applicable codes and ordinances in regard to materials, illumination, placement, installation and maintenance.

c.  Signs shall be mounted to the ground by stakes of either metal or wood that are no more than one (1) inch in width or diameter. No sign shall be installed in a permanent manner. No concrete or other type of footings or piers shall be allowed.

d.  Signs shall be installed at grade and may not be elevated by use of a berm or other artificial rise in the normal grade of the yard.

e.  No bricks, cinder blocks, pavers, masonry material, rock, railroad ties and similar materials shall be used in the installation or placement of the sign.

f.  No sign shall be affixed to any building, fence, tree, gaslight, lamppost, garage, basketball hoop or any structure or improvement.

g.  No sign shall be displayed from the interior of any window.

h.  h. All signs permitted in this Section shall only be displayed with permission of the parcel owner.

i.  All signs permitted in this Section shall be placed at least ten (10) feet from any property boundary and each right-of-way line. In the front yard, if the right-of-way line is not clear, all signs shall be placed at least ten (10) feet from the interior edge of the sidewalk or fifteen (15) feet from the inside edge of the curb if there is no sidewalk.

j.  Each sign shall have no more than two (2) sign faces which are directly back-to-back and mounted by use of the same stakes. No sandwich board signs or V-shaped signs shall be allowed.

k.  Each sign face shall be no more than six (6) square feet in size.

l.  Each sign shall be mounted so that it does not exceed four (4) feet in height.

m.  The depth of the sign, measuring each back-to-back sign face, shall not exceed a depth of one (1) inch.

n.  No materials shall protrude from the sign face.

7

<u>o.</u>  Illumination in any manner is prohibited.

<u>p.</u>  No sign shall be placed in any vacant lot or parcel.

<u>3.</u>  *Prohibitions*.  The following materials, appurtenances and types of signs are prohibited:

<u>a.</u>  The use of balloons, streamers, banners or similar objects as part of or attached to a sign.

<u>b.</u>  Beacons, spotlights and searchlights.

<u>c.</u>  Illumination of a sign either from the interior of a sign or from the exterior.

<u>d.</u>  Flashing or electronic signs.

<u>e.</u>  Moving signs, including any material that flutters, undulates, swings, rotates or otherwise moves.

<u>f.</u>  Obscenity.

<u>g.</u>  Imitation traffic control signs.

<u>4.</u>  *Maintenance and Safety*.

<u>a.</u>  All signs shall be maintained in good repair, free of rust, peeling, flaking, fading, broken or cracked surfaces, and deteriorated supports.

<u>b.</u>  All signs shall be maintained in a safe and clean condition.

<u>5.</u>  *Flags*.  The term "flag" shall include any fabric or bunting containing distinctive colors, patterns or symbols used as a symbol of a government or institution.  For purposes of this Section, flags shall not be considered signs.

Not more than one (1) flag is hereby permitted on each improved parcel within the zoning district.  Flags on residential parcels smaller than fifteen thousand (15,000) square feet shall not exceed three (3) feet by five (5) feet in size.  On parcels over fifteen thousand (15,000) square feet, flags shall not exceed six (6) feet by ten (10) feet in size.  Within five (5) days prior to and three (3) days following a national holiday, such as Independence Day, Memorial Day, Labor Day or Veterans Day, there shall be no

limitation on the number of flags displayed on any parcel of land within the City.

Flagpoles shall not exceed twenty-five (25) feet in height in residential districts.

6.  *Address*.  All owners and occupants shall ensure that the address of the property is properly displayed in accordance with law and ordinance.  The numbers or letters used to display the address of the property shall not be considered a sign for purposes of this Section.

7.  *Right-of-Way And Public Property*.  It shall be unlawful for any person, firm or corporation to paint, post, place, stick, or otherwise affix any sign, notice, placard, bill, card, poster, or other paper or device within the right-of-way (including the sidewalk) or upon public property or to any tree or appurtenance within the right-of-way or on the public property.  It shall be unlawful for any person, firm or corporation to paint, post, place, stick or otherwise affix any sign, notice, placard, bill, card poster or other paper or device to any fire hydrant, utility pole, streetlight pole, or traffic sign.

*Exception*: The prohibitions set forth in this Subsection shall not apply to any governmental entity having jurisdiction over the right-of-way or the public property.

8.  *Non-compliant Signs*.  Whenever the Code Official determines that a sign is not compliant with the requirements of this Section, is structurally unsound, unsafe, or has not been maintained in accordance with the provisions of this Section, the Code Official shall send notice to the owner or other person in charge of the sign requiring that the sign be made safe, repaired or replaced.  The owner or person in charge of the sign shall have five (5) days from the date of such notice in which to comply.

. . . .

§ 400.120(E).

The Ordinance prohibits a residential parcel from displaying more than one yard sign with two back-to-back sign faces, and forbids window and wall signs altogether.

On December 13, 2017, Plaintiff received an information and summons charging him with violating the Ordinance.  The information alleged: "On or about December 11, 2017, on

9

property owned by [Plaintiff] ... [he] did display three separate signs thereby exceeding the number of signs allowed in the residential zoning district." The information was signed by Bel-Nor municipal prosecutor Stephanie Karr.

The information advised Plaintiff that the Ordinance violation with which he was charged is punishable by "Offenses Code Section 100.080 (fine not exceeding $1,000.00, or imprisonment not exceeding 90 days, or both such fine and imprisonment.)"[4] (ECF No. 78-3.) No amended information was ever filed. (Pl. Decl. ¶ 16.)

Despite the information's statement as to potential penalties of imprisonment for up to 90 days and a fine not to exceed $1,000, Plaintiff was not subject to imprisonment for violation of the Ordinance. Section 479.353.1(2) of the Missouri Revised Statutes (2016), prohibits incarceration for a municipal ordinance violation except for violations involving alcohol or controlled substances, violations endangering the health or welfare of others, or eluding or giving false information to a law enforcement officer. (Bel-Nor Ex. D.) See also Bel-Nor recodified Code § 100.220A.2.b (Bel-Nor Ex. A-1 (ECF No. 83-2)). Nor was Plaintiff potentially subject to a $1,000 fine, as Section 479.353.1(1)(b) prohibits imposition of a fine in excess of $200 for a first municipal ordinance violation within a twelve-month period.

Because the information stated that Plaintiff might be subject to a fine, imprisonment, or both, Plaintiff was afraid he might be subject to a fine or imprisonment for violating the Ordinance. (Pl. Decl. ¶ 17.)

At the preliminary injunction hearing held in March 2018, Bel-Nor's counsel stated that a Missouri statute prevents municipalities from imposing jail time on offenses such as Plaintiff

---

[4]Bel-Nor Offenses Code Section 100.080 was recodified as Code Section 100.220. It governs the General Penalty for ordinance violations. Bel-Nor's ordinances are available online at https://ecode360.cod/BE3760.

10

was charged with and caps the amount of the fine at $250,[5] and asked if Plaintiff was aware of the statute and its effect. Plaintiff testified that he was not aware of this. (Tr. 19:7-21.) Plaintiff testified he had not yet paid any fines or served any jail time. (Id. 19:22-20:2.) Plaintiff testified that no one in Bel-Nor told him the Ordinance was not enforceable in some manner and that he would not be subject to imprisonment for violating it. (Id. 21:2-5.) Over a year later, on May 16, 2019, Bel-Nor stipulated in a Pre-trial Memorandum signed by counsel for both parties that there was no incarceration available for the municipal charge.

Bel-Nor's case against Plaintiff was not dismissed after the Court's entry of a preliminary injunction on June 21, 2019 (Pl. Decl. ¶ 18), and remained pending until Bel-Nor's municipal prosecutor filed a Memorandum of Nolle Prosequi[6] on April 22, 2020 (Bel-Nor Ex. B-2), twenty-six days after Plaintiff filed the instant Motion for Partial Summary Judgment.[7]

---

[5]This statement by counsel was incorrect and has been repeated by Bel-Nor in its summary judgment opposition. The statute's cap for a first municipal ordinance violation is $200. § 479.353, Mo. Rev. Stat.

[6]"A *nolle prosequi* is a prosecutor's formal entry on the record indicating that he or she will no longer prosecute a pending criminal charge. It results in a dismissal without prejudice unless jeopardy attaches to bar subsequent prosecution." State v. Flock, 969 S.W.2d 389, 389 (Mo. Ct. App. 1998).

[7]Bel-Nor attempts to controvert a number of Plaintiff's Statements of Uncontroverted Material Fact and establish a material fact dispute on two alleged changes in circumstance since the time of the preliminary injunction hearing: (1) The Affidavit of Bel-Nor's Mayor stating that as of May 4, 2020, he observed Plaintiff did not have the "three yard signs displayed in his yard that he did when he was cited," (Hook Aff. ¶ 8 (ECF No. 84-1)); and (2) Bel-Nor's prosecutor's filing of a memorandum of *nolle prosequi* of the information against Plaintiff. Bel-Nor does not raise a genuine issue of material fact as to changed circumstances. As stated *supra* at footnote 3, contrary to Bel-Nor's argument, Mayor Hook's Affidavit does not establish that Plaintiff has only one sign in his yard. It is uncontroverted Plaintiff has at all relevant times had more than one sign—and thus has been in violation of the Ordinance—because in addition to the "Black Lives Matter" yard sign Plaintiff has two signs that are not yard signs but are defined as "signs" by the Ordinance; he currently has two freestanding yard signs, and he intends to have more yard signs in the future. As to the *nolle prosequi* of the information, it is uncontroverted Plaintiff was injured by past enforcement of the Ordinance and seeks damages to redress that harm. In addition, it is uncontroverted that Plaintiff remains and intends to remain in violation of the Ordinance, and it may be prosecuted in the future unless permanently enjoined. Plaintiff's claim for prospective relief is not precluded by the absence of a pending prosecution because there is a genuine threat of enforcement. Steffel v. Thompson, 415 U.S. 452, 475 (1974).

11

Plaintiff had more than a dozen court dates while the municipal charge was pending (Pl. 2d Decl. ¶ 5), and was required to personally appear in court on multiple occasions for hearings on the charge. (Pl. Decl. ¶ 19; Pl. 2d Decl. ¶ 7.) Plaintiff's legal counsel also attended multiple court dates on his behalf, sent discovery requests to Bel-Nor, and communicated with the prosecution. (Pl. 2d Decl. ¶ 8.) Although Bel-Nor generally agreed to continuances of the court dates so that Plaintiff sometimes was not required to appear, Plaintiff never knew ahead of time whether the judge would grant the continuance request or not. (Id. ¶ 6.) On or about November 26, 2019, after Plaintiff believed a consent continuance for a court date had been granted (id. ¶ 9), he received a notice entitled "Show Cause Summons Failure to Appear," which warned that a warrant for his arrest may be issued if he again failed to appear. (Pl. Decl. ¶ 20; Pl.'s Ex. 6-B (ECF No. 89-4).)

Plaintiff wishes to display three signs in his yard. (Pl. Decl. ¶ 10; Answer ¶ 1 (admitting Plaintiff "wishes to display three signs in his yard") (ECF No. 8.).) Plaintiff's display of three signs in his yard violates Bel-Nor's sign ordinance. (Answer ¶ 1 (admitting that to display three signs "would violate Bel-Nor's sign ordinance"). Under § 100.220 of Bel-Nor's recodified Code of Ordinances, each day someone is in violation of the Ordinance constitutes a separate ordinance violation. § 100.220A.4.

Before the *nolle prosequi* of the information was filed in 2019, Plaintiff feared that absent a permanent injunction, Bel-Nor would continue its prosecution of him for violating the Ordinance, (Pl. Decl. ¶ 21), but now the information is no longer pending. Plaintiff fears that additional charges for violating Ordinance will be prosecuted against him in the absence of a permanent injunction. (Pl. Decl. ¶ 22.)

## IV.    Discussion

I.

As a threshold matter, the Court notes that although Bel-Nor attempted to establish changed circumstances as evidence of disputed issues of material fact to preclude partial summary judgment, it does not argue that Plaintiff's case is moot. "A case becomes moot if it can be said with assurance that there is no reasonable expectation that the violation will recur or if interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Kennedy Bldg. Assocs. v. Viacom, Inc., 375 F.3d 731, 745 (8th Cir. 2004). "The heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (internal quotation marks omitted)." Here, there is no change to the Ordinance and the Court finds Plaintiff is still in violation of it. Further, "It is well established that changed circumstances do not render moot claims for damages that arise from violations of the plaintiff's own constitutional rights." Turning Point USA at Ark. State Univ. v. Rhodes, 409 F.Supp.3d 677, 685 (E.D. Ark. 2019) (citing Advantage Media, LLC v. City of Eden Prairie, 456 F.3d 793, 803 (8th Cir. 2006)).

II.

The First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that the government "shall make no law . . . abridging the freedom of speech[.]" U.S. Const. amend. I. The limitations that the First Amendment places on the federal government apply to municipalities. See, e.g., Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 163 (2015). This case involves political and social advocacy yard signs on the Plaintiff's front lawn. "Often placed on lawns or in windows, residential signs play an important part in political campaigns, during which they are displayed to signal the resident's support for

13

particular candidates, parties, or causes." City of Ladue v. Gilleo, 512 U.S. 43, 55 (1994). "They may not afford the same opportunities for conveying complex ideas as do other media, but residential signs have long been an important and distinct medium of expression." Id.

Plaintiff contends he is entitled to summary judgment that Bel-Nor's residential sign Ordinance violates the First Amendment's Free Speech Clause for three reasons: It is facially overbroad; it is a content-based restriction that does not satisfy strict scrutiny; and, even if it were not facially overbroad or content-based, it is not narrowly tailored and fails to leave open ample alternatives for expression.

A. The Ordinance is Overbroad and Facially Invalid

"[A] law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" United States v. Stevens, 559 U.S. 460, 473 (2010) (quoting Wash. State Grange v. Wash. State Repub. Party, 522 U.S. 442, 449 n.6 (2008)); Langford v. City of St. Louis, 2020 WL 1227347, at *6 (E.D. Mo. Mar. 5, 2020). "The First Amendment doctrine of overbreadth is an exception to [the] normal rule regarding the standards for facial challenges." Virginia v. Hicks, 539 U.S. 113, 118 (2003). "[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" City of Chicago v. Morales, 527 U.S. 41, 52 (1999) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973)). "The aim of facial overbreadth analysis is to eliminate the deterrent or 'chilling' effect an overbroad law may have on those contemplating conduct protected by the First Amendment." Turchick v. United States, 561 F.2d 719, 721 (8th Cir. 1977) (footnote omitted).

A three-part test is used to determine whether a statute is unconstitutionally overbroad. "The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." Snider v. City of Cape Girardeau, 752 F.3d 1149, 1158 (8th Cir. 2014) (quoting United States v. Williams, 553 U.S. 285, 293 (2008)). "After construing the statute, the second step is to examine whether the statute criminalizes a 'substantial amount' of expressive conduct." (Id., citing Williams, 553 U.S. at 292). Third, courts must "ask whether the statute is readily susceptible to a limiting construction which would render it constitutional." (Id., citing Virginia v. American Booksellers Ass'n, 484 U.S. 383, 397 (1988)).

Bel-Nor's Ordinance restricts each improved parcel to no more than one stake-mounted, freestanding yard sign with two back-to-back sign faces, and one flag. On interlocutory appeal, the Eighth Circuit concluded the "Ordinance's expansive definition of a sign, combined with its strict sign restrictions applies to a substantial amount of expressive conduct." Willson, 924 F.3d at 1002. Plaintiff offers numerous examples of expressive conduct that the Ordinance prohibits:

- displaying Christmas lights (Ordinance prohibits an "object . . . used to attract attention to an . . . event . . . by any means, including . . . colors," and "[i]llumination in any manner is prohibited");

- tying a "Happy Birthday" balloon to the mailbox on the day a resident is hosting a birthday party ("The following materials . . . are prohibited . . . [t]he use of balloons");

- sticking an ADT Security window cling to the front window ("[n]o sign shall be displayed from the interior of any window");

- displaying a "Let It Snow" flag in a flag mount ("No sign shall be affixed to any building");

- tacking up a "Welcome Home" banner on the garage ("No sign shall be affixed to any . . . garage . . .; [t]he following . . . types of signs are prohibited . . . any material that flutters").

15

Pl.'s Mem. Supp. Mot. Summ. J. at 3-4 (ECF No. 79).

The Eighth Circuit found these examples "illustrate that Ordinance 983 creates a 'prohibition of alarming breadth.'" Willson, 924 F.3d at 1003 (quoting Stevens, 559 U.S. at 474). It concluded that "Bel-Nor's interests in traffic safety and aesthetic[s] do not justify such a broad restriction of residents' constitutionally-protected conduct," and that "Ordinance 983 is overbroad and facially invalid because 'the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep.'" Id. (quoting Snider, 752 F.3d at 1157). Rejecting Bel-Nor's argument that the Ordinance did not substantially limit its residents' First Amendment rights because they are able to display one sign with two sign faces, "rotate these signs as often as they wish" and display one flag, the Eighth Circuit held, "Even considering a two-sided sign and one flag, a one-sign limit is too restrictive under First Amendment doctrine." Id.

Bel-Nor's Ordinance is unchanged from the time of the Eighth Circuit's ruling on the preliminary injunction appeal and the factual record is not materially changed on summary judgment. Bel-Nor makes the same arguments now that it unsuccessfully asserted on the appeal. It attempts to distinguish this case from the facts of Snider, which concerned an ordinance that prohibited flag burning, by arguing the Ordinance does not "prohibit expressive conduct, such as flag burning" but rather "permits residents to display whatever expressive message, idea, or belief they want, on one yard sign with two sign faces." (ECF No. 82 at 9.) The problem for Bel-Nor is that it provides no basis for departing from the Eighth Circuit's earlier ruling in this case, which analyzed and applied Snider.

Bel-Nor also points to its significant government interests underlying the sign Ordinance—traffic safety and aesthetics—particularly its concerns over the possible distraction

16

of numerous young drivers driving on narrow streets to and from the several schools in the community, and residential clutter. These interests are also unchanged from the preliminary injunction record considered by the Eighth Circuit. The Court of Appeals found Bel-Nor's interests were not compelling and were insufficient to support the Ordinance's broad speech restrictions. Willson, 924 F.3d at 1001. See Neighborhood Enter., Inc. v. City of St. Louis, 644 F.3d 728, 737-38 (8th Cir. 2011) ("municipality's asserted interests in traffic safety and aesthetics, while significant, have never been held to be compelling").

The Ordinance is not readily susceptible to a limiting construction because it would have to be rewritten in order to conform to constitutional requirements. Willson, 924 F.3d at 1004. The courts do not rewrite laws in these circumstances, as this would invade the "legislative domain." Id. (citing Stevens, 559 U.S. at 481); Snider, 752 F.3d at 1158 ("No limiting construction would be consistent with any plausible understanding of the legislature's intent"). "Limiting constructions of state and local legislation are more appropriately done by a state court or an enforcement agency." Willson, 924 F.3d at 1004 (quoting Ways v. City of Lincoln, 274 F.3d 514, 519 (8th Cir. 2001)).

Accordingly, the Court concludes Plaintiff has established he is entitled to a declaration that Bel-Nor's sign Ordinance "is overbroad and facially invalid because 'the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep.'" Willson, 924 F.3d at 1003.

B. The Ordinance is Unconstitutional As Applied to Plaintiff

Plaintiff also seeks summary judgment on his claim that the Ordinance is unconstitutional as applied to him. "An as-applied challenge consists of a challenge to the statute's application only as-applied to the party before the court." Republican Party of Minn., Third Cong. Dist. v.

Klobuchar, 381 F.3d 785, 790 (8th Cir. 2004). To prevail, Plaintiff "must show that the [Ordinance] is unconstitutional 'because of the way it was applied to the particular facts of [his] case.'" Phelps-Roper v. Ricketts, 867 F.3d 883, 896 (8th Cir. 2017) (quoting United States v. Salerno, 481 U.S. 739, 745 n.3 (1987)).

Here, Bel-Nor issued a summons and information charging Plaintiff with violating the Ordinance and threatening him with a potential fine, imprisonment, or both, for having three yard signs on his lawn. For the reasons discussed with respect to facial overbreadth, the Ordinance has the effect of unconstitutionally circumscribing Plaintiff's protected expression. The Court concludes Plaintiff has established he is entitled to a declaration that the Ordinance is unconstitutional as applied to him.

C. The Ordinance is Content Based and Fails Strict Scrutiny

Plaintiff also contends the Ordinance is a content-based restriction that impermissibly curtails his free speech rights. "The constitutionality of a restriction on speech depends in large part upon whether it is content based and thus 'subject to the most exacting scrutiny,'" Phelps-Roper v. City of Manchester, Mo., 697 F.3d 678, 686 (8th Cir. 2012) (en banc), or a content neutral time, place, or manner regulation subject to intermediate scrutiny. Id." Survivors Network of Those Abused by Priests, Inc. v. Joyce, 779 F.3d 785, 789 (8th Cir. 2015).

"Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Reed, 576 U.S at 163. The Supreme Court established the following test to determine whether a government regulation is content based:

> Government regulation of speech is content based if a law applies
> to particular speech because of the topic discussed or the idea or

18

> message expressed. This commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys.

576 U.S at 163 (citations omitted). Applying this definition in <u>Reed</u>, the Supreme Court held the town's sign code was "content based on its face" because it defined several terms based on the message the sign conveyed, and then subjected each category to different restrictions. <u>Id.</u> at 164.

Here, the Ordinance limits each improved parcel to one stake-mounted, freestanding sign with back-to-back sides. As previously stated, the Ordinance broadly defines a "sign" as:

> Any poster, object, devise [sic], or display, situated outdoors, which is used to advertise, identify, display, direct or attract attention to an object, person, institution, organization, business, product, service, event, idea, belief or location by any means, including but not limited to words, letters, figures, designs, symbols, colors, logos, fixtures, cartoons or images.

§ 400.120(E).1.

In addition to one sign, the Ordinance allows each improved parcel "[n]ot more than one (1) flag." § 400.120(E).5. A flag includes "any fabric or bunting containing distinctive colors, patterns or symbols used as a symbol of a government or institution." "For purposes of this Section [5 of the Ordinance], flags shall not be considered 'signs.'" <u>Id.</u>[8]

"These definitions [in the Ordinance] show that the content of a flag or sign determines whether it is a flag or sign." <u>Willson</u>, 924 F.3d at 1000. Bel-Nor's Ordinance is content based because its plain language draws content-based distinctions and impermissibly imposes different restrictions "because whether a fabric is a sign or a flag—and whether it is prohibited by the Ordinance—depends on the 'topic discussed or the idea or message expressed.'" <u>Id.</u> (quoting

---

[8] Although Plaintiff does not display a flag at his house "he has standing to challenge those portions of [Bel-Nor's] Sign Code which provide the basic definitional structure for the terms used in the violated sections and which more generally define the scope of signs allowed by the violated sections." <u>Willson</u>, 924 F.3d at 1000 (quoting <u>Neighborhood Enters.</u>, 644 F.3d at 735).

Reed, 576 U.S. at 163). If a Bel-Nor resident displays an American flag outside her house, she may at the same time place a freestanding yard sign on her lawn without violating the Ordinance, because an American flag is not a "sign" under the Ordinance. If, however, a Bel-Nor resident displays a flag supporting something other than a government or institution (e.g., any decorative flag, a rainbow flag, a Black Lives Matter flag, a POW/MIA flag, or a St. Louis Blues flag), she would be in violation of the Ordinance if she also has a freestanding yard sign on her lawn, because under the ordinary meaning of the terms "government or institution," those flags are "signs" under the Ordinance.[9]

Bel-Nor denies that the Ordinance's flag exemption is content based, and argues that its definition of "flag" does not differentiate between messages displayed on a flag and instead simply limits the number and size of the flag on the property. Bel-Nor's argument ignores the written language of its Ordinance and is based on what the Eighth Circuit termed an "exceptionally broad" definition of the word "institution." Willson, 924 F.3d at 1001. Bel-Nor argues that under any ordinary and reasonable person's definition, flags for the Black Lives Matter movement, a presidential candidate, or a sporting team, for example, would all be included within the definition of "institution" and would be permitted by the Ordinance. The Eighth Circuit rejected this argument because the Ordinance as written "draws distinctions based on the message a speaker conveys." Id. Bel-Nor does not offer a basis for this Court to rule differently.

The Ordinance is also content based because enforcement authorities must determine whether a "sign" fits within the exemption set forth in the definition of "flag" by representing "a symbol of a government or institution," or whether an otherwise permissible sign is prohibited

---

[9]In addition, a homeowner displaying a flag other than that of a "government or institution" violates the Ordinance if the flag is "displayed from the interior of any window" or is "affixed to any building . . . structure or improvement." § 400.120(E).2.f., g.

because it reflects "obscenity." § 400.120(E).8 (code official determines if sign is not compliant); § 400.120(E).3.f (prohibiting "obscenity" on signs). See, e.g., Survivors Network, 779 F.3d at 790-91 (statute that banned disruption of a house of worship "by using profane discourse, rude or indecent behavior" but did not define those adjectives was content based because enforcement authorities would have to decide whether the speaker was using such language or behavior in disrupting a house of worship); Neighborhood Enters., 644 F.3d at 736 ("zoning code's definition of 'sign' is impermissibly content-based because 'the message conveyed determines whether the speech is subject to the restriction.'").

Because the Ordinance is a content-based restriction, it must satisfy strict scrutiny regardless of Bel-Nor's "benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." Reed, 576 U.S. at 165. To determine whether the Ordinance can survive strict scrutiny, the Court must examine whether it is "narrowly tailored to serve compelling state interests." R.A.V. v. City of St. Paul, 505 U.S. 377, 395 (1992). "If the restriction is not narrowly tailored to achieve a compelling interest, it is an unconstitutional restraint on free speech." Willson, 924 F.3d at 1001 (cleaned up).

The Eighth Circuit examined the Ordinance and concluded Bel-Nor's justifying interests in traffic safety and aesthetics are not compelling government interests and are not sufficient to support the Ordinance's broad restrictions on speech. Id. A "municipality's asserted interests in traffic safety and aesthetics, while significant, have never been held to be compelling." Id. (quoting Neighborhood Enters., 644 F.3d at 737-38). Opposing summary judgment, Bel-Nor reiterates its interests in traffic safety, particularly as to younger drivers on its twenty-six foot wide residential streets with parked cars on both sides, and in avoiding residential clutter, but it

does not suggest that its Ordinance can meet strict scrutiny and offers this Court no basis to reach a different conclusion than the Eighth Circuit.

Finally, the Ordinance is not narrowly tailored. Willson, 924 F.3d at 1001. "The tailoring requirement does not simply guard against an impermissible desire to censor. The government may attempt to suppress speech not only because it disagrees with the message being expressed, but also for mere convenience." McCullen v. Coakley, 573 U.S. 464, 486 (2014). "[B]y demanding a close fit between ends and means, the tailoring requirement prevents the government from too readily sacrificing speech for efficiency." Id. (cleaned up).

Here, the Ordinance is not narrowly tailored as its definition of "sign" is so broadly worded that Plaintiff asserts it bans all of the following:

> curtains printed with Easter eggs, Christmas lights, Nativities, rainbow flags, St. Louis Blues flags, a birthday streamer hung across a front porch, a welcome-home banner taped to a garage door, a balloon affixed to an "Open House Today" sign, and a wooden "please clean up after your dog" sign nailed to a tree.

(ECF No. 79 at 8.) See Stenberg v. Carhart, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning."). No rational Bel-Nor homeowner would have reason to suspect it is illegal to stick a "no soliciting" or "sleeping baby–don't ring bell" Post-It note to their front door, or place an ADT Security sticker in their window, but the Ordinance's extremely broad language criminalizes such expression.

The Eighth Circuit concluded Bel-Nor did not cite any evidence to establish that the Ordinance furthers its stated interests, finding its mayor's testimony as to public safety concerns over narrow streets, small housing lots, and many schools, offered abstract interests that did not establish a "genuine nexus between the regulation and the interest it seeks to serve." Willson, 924 F.3d at 1001-02 (quoting Johnson v. Minneapolis Park & Rec. Bd., 749 F.3d 1094, 1099

22

(8th Cir. 2013)).  Evidence of such a nexus between the Ordinance and Bel-Nor's interests is required.  Johnson, 749 F.3d at 1099.

Bel-Nor argues that its articulated reasons of traffic safety and aesthetic concerns, documented in the affidavits of its mayor and city attorney, and discussed by its Board of Alderman during public meetings, show it considered the appropriate balance between free speech and its governmental concerns.  Bel-Nor argues this is sufficient evidence to show a nexus between the speech restrictions and substantial government interests, citing Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 555 (2001) ("[W]e have permitted litigants to justify speech restrictions by reference to studies and anecdotes pertaining to different locales altogether, or even . . . to justify restrictions based solely on history, consensus, and 'simple common sense.'").  Lorillard is readily distinguishable and is therefore not persuasive in the instant case because it involved restrictions on commercial speech, which is afforded less First Amendment protection than political speech on an individual's own property.  See id. at 554 (describing the Central Hudson test, which recognizes "the distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation, and other varieties of speech[.]" (quotation and citation omitted)).

The Ordinance also does not leave open ample alternative methods of communication because of its breadth, its limit of one freestanding two-sided yard sign, and its prohibition on window signs.  "[R]esidential signs have long been an important and distinct medium of expression."  Willson, 924 F.3d at 1003 (quoting Gilleo, 512 U.S. at 55).

Bel-Nor argues the Ordinance leaves open ample alternative means of communication.  It attempts to distinguish the Supreme Court's decision in Gilleo, which invalidated a Ladue, Missouri ordinance prohibiting homeowners from displaying any signs on their property except

23

"residence identification" signs, "for sale" signs, and signs warning of safety hazards, because it "almost completely foreclosed a venerable means of communication that is both unique and important." Id. at 54. Bel-Nor argues that unlike the alternative means of communication available in 1994, when the Supreme Court held there may be "no practical substitute" for yard signs, Gilleo, 512 U.S. at 57, today the internet offers Plaintiff a means of communication with thousands of individuals, including neighbors, that is "free, easy to use, terribly convenient, and takes no more time to convey your message than it would to place a sign in your front yard." (ECF No. 82 at 16.) Bel-Nor contends that to say yard signs have no practical substitute "in the age of the internet is insincere." Id. It cites no legal authority in support of this novel proposition.

The existence of the internet does not change the truth of the Supreme Court's statement in Gilleo: "Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means. Precisely because of their location, such signs provide information about the identity of the 'speaker.'" Gilleo, 512 U.S. at 56. Placing information on the internet is not the equivalent of placing the same information on a yard sign on a person's lawn, as these are fundamentally distinct modes of expression. Additionally, not all persons have access to the internet, much less "free" access as Bel-Nor posits. As the Supreme Court stated in 1994: "Residential signs are an unusually cheap and convenient form of communication. Especially for persons of modest means or limited mobility, a yard or window sign may have no practical substitute." Id. at 57. "Furthermore, a person who puts up a sign at her residence often intends to reach *neighbors*, an audience that could not be reached nearly as well by other means." Id. This remains true today.

Bel-Nor fails to establish that the Supreme Court's holding in Gilleo is potentially undermined by widespread use of the internet.

Moreover, the internet was in use fully as much in 2019 when the Eighth Circuit considered this case as it is today. With that understanding, the Eighth Circuit held, "Due to the special significance of the right to speak from one's own home, severe restrictions of this right do not afford adequate alternatives." Willson, 924 F.3d at 1004. Bel-Nor's argument is unpersuasive and offers no basis for this Court to disregard the Eighth Circuit's holding.

In sum, the Ordinance is a content-based law because it targets speech based on its communicative content. See Reed, 576 U.S. at 163. As such, it is presumptively unconstitutional and may be upheld only if Bel-Nor proves its severe restrictions on speech are "narrowly tailored to serve compelling state interests." Id. Bel-Nor has failed to establish the existence of genuine issues of material fact as to whether the Ordinance is narrowly tailored to serve compelling municipal interests, or whether it leaves open ample alternative means of communication.

Accordingly, the Court concludes Plaintiff is entitled to summary judgment on his claim that Bel-Nor's sign Ordinance is an unconstitutional restraint on his free speech rights because it is content-based and fails strict scrutiny. See Willson, 924 F.3d at 1001-02.

D. Plaintiff's Due Process Claims

In Count II, Plaintiff asserts that the Ordinance is unconstitutionally vague on its face and thereby violates his right to due process under the Fourteenth Amendment to the U.S. Constitution. Plaintiff alleges that the Ordinance does not define "obscenity" at all, much less with sufficient definiteness that an ordinary person can understand what conduct is prohibited, and encourages arbitrary and discriminatory enforcement. (ECF No. 1 at 7.)

25

In his Reply, Plaintiff states, "It is not necessary for this Court to rule on [Plaintiff's] due process claim if he prevails on any of his First Amendment claims." (ECF No. 90 at 7.) The Court accepts this invitation. Because the Court concludes Plaintiff has established that the Ordinance violates his First Amendment free speech rights as it is overbroad and facially invalid, content-based and fails to survive strict scrutiny, it does not reach Plaintiff's Fourteenth Amendment due process claim in Count II and will dismiss the claim without prejudice. In so doing, the Court makes no comment as to the due process claim's merit or lack of merit.

## V.    Suitability of Injunctive Relief

In addition to seeking damages and a declaration that the Ordinance is unconstitutional, Plaintiff seeks a permanent injunction barring its enforcement.

Courts must consider the following factors in determining whether to issue a permanent injunction: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; (3) whether the movant proves actual success on the merits; and (4) the public interest." Lowry ex rel. Crow v. Watson Chapel Sch. Dist., 540 F.3d 752, 762 (8th Cir. 2008) (quoting Forest Park II v. Hadley, 336 F.3d 724, 731 (8th Cir. 2003), and citing, among other cases, Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc)).

With respect to the first factor, "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). Without a permanent injunction barring enforcement of the Ordinance, Plaintiff's free speech rights and those of other Bel-Nor citizens would continue to be infringed. Second, the issuance of an injunction would cause little or no harm to Bel-Nor, because it can have no significant interest in the enforcement of an Ordinance that contravenes the United

26

States Constitution.  Bel-Nor's significant government interests in protecting public safety and aesthetics can be achieved through enactment and enforcement of one or more ordinances that comport with the Constitution.  Cf. Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971).  Third, Plaintiff has succeeded on his claim that the Ordinance is unconstitutional.  Finally, "[I]t is always in the public interest to protect constitutional rights."  Phelps-Roper v. Nixon, 545 F.3d 685, 690 (8th Cir. 2008), overruled on other grounds by Phelps-Roper v. City of Manchester, Mo., 697 F.3d 678, 691 (8th Cir. 2012) (en banc).

Therefore, the Court concludes it is appropriate to issue a permanent injunction barring enforcement or threatened enforcement of the Ordinance.

## VI.  Conclusion

For the reasons discussed above, the Court concludes Plaintiff has established that § 400.120(E) of Bel-Nor's Code of Ordinances is unconstitutional because it violates his First Amendment free speech rights as overbroad and facially invalid, and as applied to Plaintiff.  Further, Plaintiff has established that § 400.120(E) is content based and fails strict scrutiny.  Plaintiff is entitled to a declaratory judgment and a permanent injunction barring enforcement or threatened enforcement of § 400.120(E).  This case remains set for bench trial on Plaintiff's claim for damages against Bel-Nor on August 17, 2020.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **GRANTED** as to Plaintiff's First Amendment free speech claims in Count I.  [ECF No. 77]

**IT IS FURTHER ORDERED** that Plaintiff's Fourteenth Amendment due process claims in Count II are **DISMISSED** without prejudice.

27

A Declaratory Judgment and Permanent Injunction and an Order of Partial Dismissal will
accompany this Memorandum and Order.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this _6th_ day of July, 2020.